IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>MATTHEW DICKASON | CRIMINAL ACTION NUMBER<br>1:23-CR-288-LMM |

**Government's Sentencing Memorandum**

The United States respectfully files this Sentencing Memorandum in advance of the sentencing hearing, which is set for March 5, 2024.

Defendant Dickason was an attorney licensed to practice law in the State of Georgia. He owned and operated an Atlanta law firm called Matthew A. Dickason, P.A., which closed hundreds of real estate transactions totaling tens of millions of dollars. Defendant Dickason fraudulently converted his clients' money to his own use and created phony accounting records to cover-up the theft. He pleaded guilty to a pre-indictment Information charging wire fraud under 18 U.S.C. § 1343.

In the Plea Agreement, the parties agreed that the base offense level is 7, and the loss amount is more than $1,500,000 but less than $3,500,000, which results in a 16-level increase. (Doc. 7-1 ¶ 13(b), (c)).

The government reserved its right to argue for an additional 2-level increase because the offense resulted in substantial financial hardship to one or more victims. (*Id.* ¶ 13(d)). But the government has since determined that this enhancement is not applicable.

Even though the Plea Agreement does not specifically address either of these things, the PSR applies the following adjustments:

- a 2-level increase for abuse of trust (PSR ¶ 40); and
- a 2-level decrease because Defendant Dickason is a Zero-Point Offender (*Id.* ¶ 44).

In the Plea Agreement, the government agreed to recommend a 3-level reduction for acceptance of responsibility. (Doc. 7-1 ¶ 14). The PSR applies this adjustment. (PSR ¶ 43).

The Plea Agreement further states as follows:

> Except as expressly stated elsewhere in this Plea Agreement, the parties . . . reserve the right to make recommendations regarding the application of the Sentencing Guidelines. The parties understand, acknowledge, and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed.

(Doc. 7-1 ¶ 15). Other than what is expressly stated in the Plea Agreement, "[t]here are no . . . agreements, promises, representations, or understandings between the Defendant and the Government." (*Id.* ¶ 30).

The PSR sets Defendant Dickason's Offense Level at 20 and places him in Criminal History Category I, which results in a custody guideline range of 33 to 41 months. (PSR ¶¶ 45, 49; U.S.S.G. Sentencing Table).

A. **Defendant Dickason's objection to the abuse-of-trust enhancement, as set forth in paragraph 40 of the PSR, should be overruled.**

The Sentencing Guidelines require a two-level enhancement "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. "For the adjustment to apply, the government must establish both elements: (1) that the defendant held a place of public or private trust; and (2) that the defendant abused that position in a way that significantly facilitated the commission or concealment of the offense." *United States v. Ward*, 222 F.3d 909, 911 (11th Cir. 2000).

The initial question is whether Defendant Dickason occupied a position of trust with respect to any of the victims, because "[o]ne must hold a position of trust before it can be abused." *United States v. Mullens*, 65 F.3d 1560, 1567 (11th Cir. 1995). "Sentencing and reviewing courts must determine whether a defendant occupied a position of trust that justifies the § 3B1.3 upward

adjustment by assessing the defendant's relationship to the victim of the crime." *United States v. Williams*, 527 F.3d 1235, 1250 (11th Cir. 2008).

The Eleventh Circuit has "explained that § 3B1.3 applies in the fraud context where the defendant is in a fiduciary, or other personal trust, relationship to the victim of the fraud, and 'the defendant takes advantage of the relationship to perpetrate or conceal the offense.'" *United States v. Williams*, 527 F.3d 1235, 1250 (11th Cir. 2008) (quoting *United States v. Garrison*, 133 F.3d 831, 838 (11th Cir. 1998)).

"As a general matter, an attorney occupies a position of trust with regard to his clients." *United States v. Morris*, 286 F.3d 1291, 1297 n.8 (11th Cir. 2002) (quoting *United States v. Walker*, 191 F.3d 326, 338 (2d Cir. 1999)). The § 3B1.3 enhancement applies to "an attorney who abuses the trust of a client." *Id.* Stealing a client's money is an abuse of the client's trust. *See* U.S.S.G. § 3B1.3, cmt. n.1 (stating that the abuse-of-trust adjustment applies, for example, to an attorney who embezzles a client's funds while serving as the client's guardian).

Furthermore, "fraud committed by attorneys outside the context of a client relationship can merit an enhancement under the 'special skill' provision of § 3B1.3, which specifically mentions lawyers in the list of examples." *Morris*, 286 F.3d at 1297 n.8 (citing U.S.S.G. § 3B1.3, cmt. n.3).

Here, it is undisputed that Defendant Dickason had an attorney-client relationship with at least some of the victims; they were his clients. (*See* PSR ¶¶ 25, 28, 29). Here are two examples:

- In one instance, Defendant Dickason's client was First IC Bank. First IC sent funds to Defendant Dickason's escrow account on behalf of a buyer (Duan) with the understanding that Defendant Dickason would use the funds to pay off the seller's (Malowany's) mortgage. Defendant Dickason used the funds for unauthorized purposes. As a result, First IC incurred a loss of $643,363.23. (PSR ¶ 31; Government's Loss & Restitution calculations at page 26 of the PSR).

- In another instance, Defendant Dickason's client was BrandMortgage Group, LLC. Brand sent funds to Defendant Dickason's escrow account to refinance a mortgage for a borrower named Gonzalez. Defendant Dickason never paid off Gonzalez's existing mortgage at Navy Federal. Instead, Defendant Dickason used the funds for unauthorized purposes. As a result, Brand incurred a loss of $140,009.61. (*Id.*).

The commentary to § 3B1.3 states that "a position of public or private trust [is] characterized by professional or managerial discretion[, and] [p]ersons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." § 3B1.3, cmt. n.1. "For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.*, by making the detection of the offense or the defendant's responsibility for the offense more difficult)." *Id*. This enhancement applies, for example, "in the case of an embezzlement of a client's funds by an attorney serving as a guardian." *Id*.

"[A]s an attorney, [Defendant Dickason] had significant professional discretion. Indeed, attorneys are 'subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.'" *United States v. Ravenell*, No. 1:19-CR-00449, 2022 WL 20690607, at *5 (D. Md. June 23, 2022) (citing U.S.S.G. § 3B1.3 cmt. n.1).

"To determine whether the defendant abused the position of trust in a way that significantly facilitated the commission of the offense, the court should inquire as to whether the defendant used any special knowledge provided by his position of trust to facilitate the offense." *United States v. Szekely*, 632 F. App'x

546, 549 (11th Cir. 2015) (citing *United States v. Brenson*, 104 F.3d 1267, 1287 (11th Cir. 1997)). "There must be a nexus between the offense of conviction and the abuse of the position of trust such that the defendant uses the 'position of trust to give him an advantage in the commission . . . of the offense.'" *Id.* (quoting *United States v. Barakat*, 130 F.3d 1448, 1455–1456 (11th Cir. 1997)). Defendant Dickason's position as owner of the law firm allowed him to commit "'a difficult-to-detect wrong.'" See *United States v. Wright*, 452 F. App'x 208, 211 (3d Cir. 2011) (quoting *United States v. Thomas*, 315 F.3d 190, 204 (3d Cir. 2002)). Defendant Dickason had authority over the firm's escrow accounts. Because his clients trusted him with their money and had no way to monitor him, he was able to embezzle money for years without anyone noticing.

In fraud cases, "§ 3B1.3 applies . . . where the defendant is in a fiduciary, or other personal trust, relationship to the victim of the fraud, and the defendant takes advantage of the relationship to perpetrate or conceal the offense." *United States v. Ghertler*, 605 F.3d 1256, 1264 (11th Cir. 2010) (citation omitted). Defendant Dickason had a fiduciary relationship with his firm's clients. *See, e.g.*, *Nardella Chong, P.A. v. Medmarc Cas. Ins. Co.*, 642 F.3d 941, 942 (11th Cir. 2011) ("The deposit of clients' funds into a trust account creates a fiduciary relationship between those clients and the law firm."); *Harvick v. Oak Hammock Pres. Cmty.*

*Owners Ass'n Inc.*, No. 6:14-CV-937-ORL-40, 2015 WL 667984, at *5 (M.D. Fla. Feb. 17, 2015) ("Although there is no exhaustive list of fiduciary relationships, fiduciary duties most commonly arise between attorneys and their clients.") (citation omitted); *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1362 (S.D. Ga. 2012) ("Fiduciary relationships include, *but are not limited to*, the attorney-client relationship."), *aff'd,* 523 F. App'x 580 (11th Cir. 2013). The abuse-of-trust enhancement applies where an attorney embezzles money from his clients. *See, e.g., United States v. Marley*, 621 F. App'x 936, 943-44 (11th Cir. 2015) (finding that the district court properly concluded that the abuse-of-trust enhancement applied because the victim allowed the defendant "to exercise a significant amount of discretion with regard to his work and billing practices").

Defendant Dickason's law firm conducted hundreds of residential real estate closings during the course of the scheme. Banks transferred loan proceeds to the firm for safekeeping and expected that those funds would be used only for the intended purpose. Defendant Dickason had a duty to safeguard those funds. Nevertheless, he used his position of trust to embezzle money from the firm's escrow accounts, thereby causing damage to the firm's clients.

For all of these reasons, this Court should overrule Defendant Dickason's objection and apply a two-level increase for abuse of trust.

### B. The § 3553(a) factors call for a sentence within the applicable Guideline range.

"The district court must impose a sentence 'sufficient, but not greater than necessary, to comply with the purposes' of [18 U.S.C. § 3553(a)]." *United States v. Rodriguez*, 75 F.4th 1231, 1241 n.3 (11th Cir. 2023). In making that determination, the district court must consider "the sentencing range provided by the Guidelines and the § 3553(a) factors." *United States v. Anderson*, 1:06-CR-0358-RWS, 2008 WL 1925084, at *2 (N.D. Ga. Apr. 29, 2008) (quoting *United States v. Williams*, 472 F.3d 835, 837 (11th Cir. 2006)). Although the district court must consider all of the applicable § 3553(a) factors, it does not have to give all of the § 3553(a) factors equal weight; a sentencing court "is permitted to attach 'great weight' to one factor over others." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007). A sentence within the guideline range is usually considered to be reasonable. *United States v. Cruz*, 482 F. App'x 528, 530 (11th Cir. 2012) (citing *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

Here, the § 3553(a) factors—especially the nature and circumstances of the offense, the defendant's history and characteristics, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law,

and to provide just punishment for the offense—call for a within-Guidelines sentence. *See, e.g., United States v. Thorson*, 633 F.3d 312, 322 (4th Cir. 2011) (affirming within-Guidelines sentence for lawyer convicted of fraud, and noting that district court rejected defendant's request for leniency even though defendant was "a nice man [who had] a lovely wife, good children, [and] went to church," because his history and characteristics also included "obtaining a law degree, which he . . . used to further a criminal enterprise"); *United States v. Giacomi*, No. 3:19-CR-00007 (MPS), 2020 WL 7706781, at *4 (D. Conn. Dec. 29, 2020) (noting that a lawyer who steals money from his clients erodes the trust that our society places in the legal profession, and the sentence imposed should reflect the seriousness of the offense and promote respect for the law).

While this case is certainly a tragedy for the victims who suffered financial losses, it is also a tragedy for the legal profession. *See Thorson*, 633 F.3d at 322. And the need to reflect the seriousness of this offense and promote respect for the law would be undermined by a below-Guidelines sentence; indeed, such a sentence would promote disrespect for the law by giving the impression to the public that the legal profession takes care of its own. *See United States v. Murtha*, No. 3:17-CR-00180 (MPS), 2020 WL 4282166, at *3 (D. Conn. July 27, 2020).

## Conclusion

For all of these reasons, the Court should sentence Defendant Dickason within the Guideline range, not below it.

Respectfully submitted,

Ryan K. Buchanan
*United States Attorney*

John Russell Phillips
*Assistant United States Attorney*
Georgia Bar Number 576335

600 United States Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
(404) 581-6000